at all. On behalf of Mr. Mychszak, Mr. Michael Aresis, on behalf of Woody, Inc., Ms. Jill Williams. Thank you, Mr. Aresis. You may proceed. Thank you. Good morning, and may it please the Court, Counsel. I'm Mike Aresis, and along with Mary Adobe, we have the privilege to appear today on behalf of the plaintiff's appellants, Guy and Fawn Mayshak. The plaintiffs brought this suit to recover damages as a result of a propane gas explosion that destroyed a mobile home. Guy, who was investigating a report of a gas leak, was severely injured in the explosion. The trial court granted summary judgment to Woody's on the issue of proximate cause. We respectfully submit that proximate cause was a question of fact in this case, as it was in most cases for the jury based on the circumstantial evidence. If we are correct, the judgment below must be reversed in the case for a mandate for further proceedings. Now, I know the Court is familiar with the briefs and the record and the facts, but this appeal does depend to a large degree on the facts as well as the law, and we can briefly state the facts. Woody sold a large propane tank and connected the tank to the gas line running underneath the Browns trailer in 1994. Pursuant to agreement, Woody's filled the tank as needed for nearly 20 years and inspected the tank and valves. The tank came with a 1990 single-stage regulator. The purpose of the regulator is to reduce pressure to the desired operating range for the appliances, the gas appliances inside the home. Woody was in the process of inspecting and replacing single-stage regulators with safer two-stage regulators before the gas explosion took place. Now, the trial court recognized that proximate cause could be shown by circumstantial evidence. That much I think we can all agree on. However, it found that the evidence did not create a question of fact for the jury. Now, we submit that the trial court misapplied the law for at least two reasons. First, relying on Claire v. Bond, Coney, Gasp, a 1934 decision, the trial court held that Woody's had no duty regarding the gas line because it did not install the line or maintain the line, and it did not know of a leak before the explosion. Counsel, does your proximate cause argument rely on Woody having control over the piping under the mobile home? I think it depends to a large degree on their knowledge of a defect in the system. In the piping? In the piping, in the copper piping. The piping underground or what? The piping, not underground, above ground, but underneath the trailer. Underneath the trailer where the tank connected to the trailer. Did Woody have any knowledge of any problems with the piping? Well, what our expert, Tim Dunn, would have testified to was the fact that they should have known that the copper tubing to which they connected the tank was unsupported or inadequately braced in violation of the code. And if I can just refer, Justice Bridges. You say in violation of the code. I thought the briefs indicated that there wasn't a requirement as between steel and copper tubing. That is almost correct. It is correct. Tell me what's wrong. What's wrong with it is that the copper has to be adequately supported to be in compliance with the code. Let me go to the deposition of Tim Dunn. Bottom of page 102, it's in the second supplemental record. Question, and this goes to your point, Justice McQueen, and also to your point, Justice Bridges. And what standard is there that promulgates the only steel piping should be used? Answer, well, there is no standard that speaks directly to steel piping being used. Remember, steel piping has a rigidity that can carry the load, the transfer, when the homeowner, Mr. Brown,  But he continues. Steel piping is the norm for mobile homes. And National Fuel Gas Code, now we go to the top of page 103. Pamphlet 54, I'm using the 1992 edition. Remember, this has been out there since 1994, nearly 20 years at the time of the explosion. 3.36, hanger supports and anchors. Piping shall be supported with pipe hooks, metal straps, bands, brackets, or hangers suitable for the size of the piping of adequate strength and quality. Piping shall be anchored to prevent undue strain on connected equipment and shall not be supported by other piping. Counsel, my question is, is there anything in the record that suggests that Woody actually observed or noticed the lack of support of the copper pipe? Dunn testified that when they connected up the copper, the tank to the copper line, they would have seen it. They would have seen that it was not adequately braced. Now, look at how the trial judge handled the issue. She didn't really get to the issue. What she says is, well, relying again on Claire, that there was no knowledge of a leak. Okay, there was no knowledge of a leak. We will agree to that much. But she did not address the issue of whether there was notice of a defect in the system. And I know, Justice Bridges, that's your question. And what Dunn says, and he says it repeatedly in the deposition, is that they would have seen it. They had to connect the tank to the copper, and they had to connect it to the copper underneath the trailer where it was not adequately braced. That's the defect. It's not just a matter of whether they had notice of a leak. It's whether they have notice of a defect. That's also Adams versus Northern Illinois Gas, which we cited in our brief. It only makes sense. Gas is a dangerous commodity. A gas supplier with superior knowledge, knowledge that that bracing wasn't there, should not have to wait for the leak to take place to have reason to know that the defect can cause a leak. Woody's may not have known of a leak, but it had every reason to know of a defect in the system. Dunn testified that the explosion could have resulted from the copper line that caused a leak inside the trailer when Brown shut off the valve outside. His opinion was that when Woody's hooked up the tank in 94, Woody's should have seen, in Dunn's words, and this is at page 1941 of the record, a strange and aberrant, quote, strange and aberrant tubing underneath. That goes right to your question, Justice Bridges. Where Woody's connected the gas supply line underneath the trailer was, quote, not to code, close quote. That's at page 1937 of the record. According to Dunn, copper was retrofitted for, quote, some crazy reason, close quote, and that's again Dunn's words, to supply gas to the appliances. Steel piping is the norm. Copper, if used, has to be supported to prevent damage or undo strain. Copper is soft. It relies on a flare to make a seal. Dunn also testified they shouldn't have been using that type of seal underneath the trailer where the tank was connecting to the feed line. Did the explosion take place inside? It took place inside. The leak was inside because of the strain on the tubing that came from underneath the trailer when Brown turned the valve to shut off the gas that was going to the range inside. So his testimony is Brown is underneath. He turns off the valve. The unbraced copper, the load is transferred. The pressure that he's putting on it to turn it off all the way to the right is causing a slow leak in the piping above the floor next to the furnace that causes the explosion in the furnace to catapult up and out 2 days later. Because he turns off the... Did you seek a summary judgment in your favor based upon this testimony? No. No. It's a question of fact. You can draw different inferences. We're not here saying, look, we're not here saying one way or the other, you know, well, that's a matter of law. We think that's a question for the jury. If it's a question of fact that you present your position and your position is uncontroverted, then why wouldn't it be summary judgment? Well, if we get back to the trial court, maybe that's the next motion. I know what you're saying. But all I'm saying is, to me, it's susceptible to different inferences, right? I mean, you can have reasonable inferences either way. We have a case we cited Oliver. And in Oliver, what happened in Oliver? We got another gas explosion. And I learned more about gas explosions in this case than, you know, in the last 35 years. So in Oliver, the appellant court describes the evidence as being consistent with two equal competing views. Two equal competing views. It's a purely circumstantial case. Verdict for the plaintiff, the court upholds it. And that's all really we're saying here is that there was evidence to really two different bases. But there was at least evidence that the copper tubing, when it's not braced, presents the danger of a leak. But the leak would not be outside. The leak would be inside next to the furnace because, remember, that's the feed line that's still taking gas. Brown turned off the gas to the range, so the gas is only going to go up to the furnace. And it ignites two days later. We're not exactly sure why it ignited. It could be from a blower fan. It could be from a timer on the lights. But it clearly ignited after there was a slow leak. And Dunn testified, and the opinion testimony is not contradicted by any physical evidence. There isn't any physical evidence. It's inconsistent with this theory that the unbraced piping could have been a cause of the explosion. Did Dunn know when the copper pipe was installed or who had installed the copper pipe? We don't know who installed it, but we know it was in place in 1994 at Justice Bridges because the testimony is Brown, the homeowner, never repiped. So we know at one point before 94 it had steel tubing because there's steel tubing underneath. But we know at some point by the time Woodies comes on the scene and hooks up the tank to the trailer line that the copper tubing is there. And the evidence is clear, and I think we can all agree that the Browns didn't do anything to repipe after that tank was first connected up in 1994. Now, they did try very hard during Dunn's deposition to insist that he couldn't know, he couldn't possibly know what the situation was in 94, but you just put it together. They never repiped, and they know they connected up to a copper line. So obviously it didn't change between 1994 and the time of the occurrence in 2013. And Dunn testified that Woodies should never have hooked up the tank to a system that they knew was unsafe based upon the lack of bracing on the tubing. Woodies would have seen that substandard system when they refilled the tank every year. Again, that's Dunn's testimony. And if Woodies had replaced that single-stage regulator, as it should have by 2005, by which time it had exceeded its 15-year service life, a jury could find that Woodies should have known that the substandard piping also needed to be changed when it did a leak check of the system. If the cause of the explosion was the piping, wouldn't the explosion have occurred even with a new dual-stage regulator? That's right. You're right. So the single-stage regulator was a defect that may or may not have been the cause of the explosion. And even Dunn said, you know what? Of the two theories, he thinks the more likely theory is the bad piping. So you're right. But theoretically, it could have been both, right? It could have been that at one end of the tank the single-stage regulator was not properly regulating, and at the other end, there is Mr. Brown turning off the valve that causes the strain that causes the leak. I mean, it could be both, or it could be one or the other. But there was evidence to support at least one of those two theories. Let's talk about the single-stage regulator for just a second. He couldn't test the regulator because it was a victim of the explosion. It burned up. They couldn't test the regulator. There is no direct evidence. I'll be the first one to say this. There is no direct evidence that the regulator failed. But what we also know is that the regulator, if it wasn't doing its job, could allow an overpressure situation to occur in the trailer. And that would be true even if the Welch plug... There is a testimony about the Welch plug that's supposed to... And to put this in perspective, the gas that's flowing through the lines to the appliances should be like 10 psi. So it's going to blow at 50. It didn't blow. But all that tells us is the overpressure never got above 50. It doesn't tell us that it wasn't overpressured. All it tells us, it didn't exceed a certain limit that would have caused the Welch plug to blow. So, again, the physical evidence doesn't necessarily contradict that theory. I know that my time has expired, but just if I can just briefly sum up. And I don't need to get to the theory about the fair to warn. I'll stand on the briefs on that. The leak could have been caused by either the lack of support for the tubing or the overpressure from the single-stage regulator. Either way, a jury could find that Woody's negligence approximately caused the gas explosion. For all the reasons set forth in our briefs, we ask you to reverse and remand for further proceedings. Thank you for your time this morning. Thank you. You'll have an opportunity to make a vote. Ms. Lewis, you may proceed. Good morning. Good morning. I'm here to support Council. So this entire appeal hinges on Mr. Tim Dunn's opinions. And when I first got the plaintiff's brief, the citations were to his affidavit and to a few select pages from his deposition, and I thought, wait a minute. His deposition, he retracted virtually every single opinion he had and or could support nothing, none of the opinions that they were, ended up just being sweeping conclusions. So when I looked at the record, sure enough, his deposition was not there. So I filed a motion for leave to supplement the record, and the deposition is now in the record on appeal. But if you read his deposition, you will see that his original opinions about, let's start with the copper piping. His original opinions were, copper piping is not allowed under the NFPA standards. But by the time I take his deposition, sure enough, he retracts that and he says, oh, you know what? Those standards don't apply to mobile homes, so it's perfectly fine to have copper piping under the mobile home. So what's the problem with copper piping? He says, there's nothing wrong with it, except for, maybe there's some connection problems and flanges and, I don't know, whatever else he says underneath, what's ever happening underneath that I guess you saw in photographs. The problem with that is, how is that connected to Woody? Okay, Woody never went under the mobile home. Woody had no obligation to go under the mobile home. You're saying that the pig is not underneath the trailer? I'm sorry? The tank isn't under the trailer? No. The tank is adjacent to the trailer, outside, and Mr. Dunn says, well, when Woody hooked it up, they should have seen it was a copper piping. Okay, one, you don't know that it was copper when Woody hooked it up, and two, even if it was copper, you just said that it's okay to have copper. So where's the problem? Illinois law, the Supreme Court says that gas suppliers are assumed to, are reasonable to believe that piping is safe for the gas that is coming into the house or mobile home. Woody would have had no reason to go underneath the mobile home, and there's absolutely no duty imposed by Illinois law requiring it to go underneath the mobile home to see if in fact there's some issues with connections and flanges and whatnot. Prior to the explosion, did Woody ever inspect the piping? So I apologize. I am so really hard of hearing, so I'm going to say what a lot. I'm sorry, I'm sorry. Prior to the explosion, is there anything in the record that said Woody inspected the gas line? Not at all. There's not one shred of evidence. Mr. Dunn's opinions are based on pure speculation. He does not know, he doesn't even know when the steel pipes were changed to copper pipes. He doesn't know who did that. It certainly wasn't Woody. Woody said, the only testimony, the undisputed evidence in the record, is that Woody never did anything to the piping system, never inspected it at all. Woody had a contract to supply propane to the tank outside the mobile home, and it did that. And the last time it did that was in September, a month before this explosion happened. The tank was 72% full. They only need to fill it if it's 40% or less. So literally, they checked the propane level, it was fine, no problems. They go on their merry way. Their contract does not require them to inspect anything, not even the tank. To the extent they did that, Your argument seems to be that your client has no duty, so it doesn't make any difference what the proximate cause is. Am I mischaracterizing that or not? Our argument in the trial court below was that we owe no duty, that plaintiff cannot establish proximate cause because plaintiff does not know what the cause of the explosion is. And so plaintiff went and got Mr. Dunn, and Mr. Dunn filled out a really nice affidavit that made a lot of sweeping pronouncements and conclusions, and then when we take his deposition, he had to backpedal. And he had to admit that he has no idea if the regulator failed or didn't fail because the regulator doesn't exist because it melted in the explosion. No one could say there was anything wrong with that regulator. Now, Mr. Dunn says, well, it was really old. Okay. Mr. Dunn also said in his deposition, well, age doesn't really mean it's unsafe because I have seen regulators that are 40 and 50 years old that function perfectly fine. So age does not equate unsafe. The fact is, if you don't know if something failed or malfunctioned, there's no way you can say it caused an explosion. And when Mr. Dunn was asked, okay, if it didn't fail, then how did it cause or contribute to this explosion? He said, well, it allowed gas to come into the mobile home. Okay. I'm pretty sure that's what the point of the tank and regulator is, to let gas into the house, all right? That doesn't mean that the regulator caused this explosion. The unfortunate situation is that we have an explosion and nobody knows why. There was a leak by the furnace. Now, Mr. Brown, when he left town to go to Florida, left the pilot light on to the furnace, and there was a leak next to the furnace. They also have an automatic switch, and there was some thought that when that automatic switch turned on the lights, the explosion happened. I don't know. Mr. Dunn doesn't know. Nobody knows. And if nobody knows, you cannot causally connect anything when he did in supplying propane to this explosion. The other thing I just wanted to point out was about the warnings. So that's another thing that Mr. Dunn retracted on. He said that we should have had all of these warnings, but then he admitted at his deposition that, in fact, all of our warnings were all the standard warnings that PERC, and I don't know what PERC stands for off the top of my head, but it's the governing body for whatever warnings are supposed to go with propane tanks, that our warnings had all of those, but we should have gone above and beyond and warned them of all sorts of other things, but the law doesn't require Woody or any other propane supplier to provide a laundry list of warnings, like you should probably get your furnace checked every 20 years or so. At the end of the day, it wouldn't have mattered because Mr. Brown didn't read the warnings and his wife didn't read the warnings. Well, we don't know. She's passed away, but the daughter says she doubted that she read warnings. So Illinois law says unless somebody prevents somebody from reading a warning, the failure to read negates a failure to warn case. So there's no suggestion that we prevented the Browns from reading the warnings, and the trial court properly found that the failure to warn aspect could not be maintained. I would ask that this court affirm the trial court ruling and granting sovereign judgment in favor of Woody on the grounds that she found, which was that there was no competent evidence other than pure speculation of Mr. Dunn to conclude that Woody's conduct proximately caused this explosion and that the trial court's order be affirmed. Thank you. Thank you. Mr. Recess, you may proceed. Okay. Facts can be stubborn. They can be inflexible, like steel tubing. They're not malleable and they can't be manipulated, like copper tubing. Fact, the piping underneath the trailer was copper. Fact, Woody's connected the tank to the copper line under the trailer. The tank is not under the trailer, Justice McClary. The tank is adjacent to the trailer. But the line, the feed line, the supply line that they hook up to is under the trailer, and that's where the unbraced copper tubing is located. Fact, that copper line was in place in 1994 because the Browns never did any re-piping on the system after Woody's installed the tank. Fact, the National Fuel Code requires copper, when it's used, to be adequately braced. This tubing, in the uncontradicted opinion of Mr. Dunn, was not adequately braced. As far as the law is, you know, Justice McClary, you also raised a good question. You said, maybe this isn't a case about proximate cause, maybe it's a case about duty. Well, on this issue, I agree. I think it is a question about duty, and duty is a question of law. Here I am, a plaintiff's lawyer. I'm thinking about duty. So let's talk about duty for a second. Adams sets forth the law. The rule in Illinois as to liability of a gas supplier is that the company's responsible for a customer's pipe, to go to Justice Bridges' question, if it is knowledge of a leak. Oh, we don't have that here, okay. Didn't know about the leak. Or a possible defect. A possible defect. How would they have known about it? They're out there. They're connecting the tank up in 1994 to copper tubing that isn't braced. It's very simple. If you see something, say something. They would have seen it. Page 84 of Dunn's deposition. He says it's clearly visible. Clearly visible. Or maybe that's a fair question for the jury, what they should have done, and whether they were negligent in failing to. Did he say where you had to be in order to see what was clearly visible? He did, right. You have to get down underneath the trailer, lie on your back on a trailer dolly or whatever. It was not made that clear. But clearly it would have been visible tilting up underneath. But you're right. It wasn't made that clear as to whether you could see it from so far of a distance back or whether you had to be underneath. But either way, that sounds to me like a jury question. Not a question that can be decided on summary judgment. Dunn was clearly qualified as an expert, and his opinions were based on his review of the testimony and photographs. He had the photographs that showed all this. There isn't any physical evidence. I did not hear counsel say one word about any physical evidence that contradicted the theory that Mr. Dunn testified to concerning the unbraced tubing. The code recognizes the tubing is dangerous if it's not properly held in place, and Dunn testified it should not have been used underneath the trailer. It should be up to the jury as to try or fact to decide if Woody's was negligent in hooking the tank up to a system that it should have known used unsafe piping and whether that negligence approximately caused the explosion. Mr. Euston. I'm sorry. Go ahead. Was there any evidence or testimony relating to how long it would take a pilot light that blew out, how long it would take for a pilot nozzle to allow enough gas to escape to cause an explosion? There wasn't any evidence as far as a pilot light going out. I think what happened, the pilot light to the gas range was shut off because the gas was shut off, and Mr. Brown made sure that the gas range was shut off. So we're talking about the furnace. The pilot light was still on. The furnace was going to kick in if it was, I think, set at 50 degrees. But what happens is the theory is that Brown turns off the gas that goes to the appliance, to the fan, and then the gas collects inside over a couple of days, and there's some ignition source. Maybe it's the blower fan. Maybe it's the lights. We don't know what was the ignition source, but that caused the explosion. But there is no evidence that says that it would have to be so many hours. All we know is that when Brown left an hour later, he didn't smell anything. So whatever he did happened after the fact. Under existing case laws, is there a difference between a piping defect and piping that is substandard? I don't believe that there is any difference at all. If it's substandard, you've got a duty. Substandard means there's negligence, and that means it's defective, it's unsafe. And you don't have to wait for the leak to take action because the defect can cause the leak. So for all the reasons I've put forth in that brief, we ask you to reverse. We know that oral argument is not a matter of rights. It's a matter of race. I appreciate the opportunity to address you this morning on behalf of Guy and Fondation. Thank you. Thank you. We'll be at short recess. We have other cases on the call.